EDWARD PUGLIESE vs. COMMONWEALTH.

Suffolk.    January 8, 1957. — February 27, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Constitutional Law*, Assistance of counsel, Due process of law.  *Practice,
Criminal*, Assistance of counsel.  *Feeble-minded Person.  Words,* "Law
of the land."

A high grade moron at about the border line of feeble-mindedness, about
twenty-three years of age, was under such incapacity that he was not
accorded the fundamentals of a fair trial or due process of law as re-
quired by art. 12 of the Declaration of Rights of the Massachusetts
Constitution when he stood trial and was convicted on serious non-
capital charges without counsel since he had no funds to secure counsel
and the trial court did not assign counsel.

PETITION for a writ of error, filed in the Supreme Judicial
Court for the county of Suffolk on October 25, 1954.

The case was reserved and reported by *Whittemore, J.*

*Walter N. Kernan, (Nathaniel T. Dexter* with him,) for the
petitioner.

*Arnold H. Salisbury,* Assistant Attorney General, for the
Commonwealth.

*Mark DeW. Howe,* amicus curiae.

*LaRue Brown,* by leave of court, submitted a brief as
amicus curiae.

WILKINS, C.J.   The plaintiff in error, whom we shall call
the petitioner, is serving four concurrent sentences imposed
in the Superior Court for Middlesex County on June 13,
1946.    Two sentences of not exceeding ten nor less than
eight years were for kidnapping, and two of not exceeding
fifteen nor less than twelve years were for assault with a
dangerous weapon with intent to rob and robbery.    On
October 25, 1954, he sued out a writ of error in this court,
assigning as error that he, an indigent person, was tried
without counsel in violation of his rights under art. 12 of the

Declaration of Rights of the Constitution of Massachusetts and under the Fourteenth Amendment to the Constitution of the United States. G. L. (Ter. Ed.) c. 250, § 9. The single justice reserved and reported the case without decision upon the petition, assignments of error, the return, the answer, and his findings of fact.

The facts appear from the single justice's findings or as matter of record. The indictments were against the petitioner, one Frizzi, one Silva, and one Brazzo, and arose out of one occurrence in which they allegedly took part with one Brigiola, who was separately indicted. Silva pleaded guilty and testified for the Commonwealth. The indictments against Frizzi were nolprossed for lack of adequate identification. The indictments against Brazzo, Brigiola, and the petitioner were tried. Brazzo and Brigiola were each represented by attorneys. The petitioner did not have counsel. Brigiola was found not guilty. The petitioner and Brazzo were found guilty.

The petitioner, born in 1923, is of normal appearance and speech. He is of low intelligence at about the border line of feeble-mindedness. Beginning with kindergarten he attended school for only seven years, getting through the third grade. He has been classified by examining psychiatrists as a high grade moron. He tests for intelligence at about 68 to 70 on a numerical scale which fixes normal at 100, and on which the area from 80 to 100 is called by the psychiatrists dull normal. The border line of feeble-mindedness is fixed by them in the area about or just above 70. He was not suffering from mental disease or psychosis which would affect his criminal responsibility, and was aware of what it meant to plead guilty to indictments for robbery, assault with a dangerous weapon, and kidnapping. He uses and understands the language of usual ordinary communication among adults and had no difficulty before the single justice in answering in good English the questions of counsel relevant to the four cases in which he was convicted. In 1941 psychiatrists found the petitioner was feeble-minded, with confirmed habits of delinquency, and recommended to

the superintendent of the Concord Reformatory that he be committed to the department of defective delinquents at Bridgewater. One of the psychiatrists then found the petitioner to have a "pre-psychotic personality." His discharge from the army in April, 1944, was "Type: Other than honorable," and the reasons stated were "Inaptness and habits and traits of character which rendered his retention in service unnecessary." His condition was diagnosed as "mental deficiency unstable type."

The petitioner has been in court on criminal charges twelve to fourteen times beginning in 1934 when he was eleven years of age. In 1939, on a charge of rape, he was represented by counsel and found not guilty. In 1945, he was tried in Suffolk County on four counts for robbery, was represented by counsel and found not guilty. He did not have counsel in two cases in the Boston Juvenile Court and in six cases in District Courts.

On April 11, 1946, the petitioner, when represented by a member of the Voluntary Defenders Committee, pleaded guilty to an indictment in the Superior Court for Suffolk County, and was sentenced to a term of four to five years. In 1946 the Voluntary Defenders Committee was not operating in Middlesex County because of a limited staff. A member of that committee, who interviewed the petitioner in February, March, and April, 1946, as to the Suffolk County charges, told the petitioner that he could not represent him in Middlesex County, and suggested that the petitioner ask the court to appoint counsel.

On June 13, 1946, the petitioner, who had pleaded not guilty on March 8, 1946, was brought to court at Cambridge from the State prison. While in the dock awaiting trial he asked the assistant district attorney if the court would appoint counsel, and was told that the court did not do so in noncapital cases. Later the judge asked the petitioner if he was represented by counsel, and the petitioner answered that he did not have counsel and would have to represent himself. The petitioner was then without funds to secure counsel. The petitioner questioned one witness during the

trial.  He did not then know of the statutory provision for summoning witnesses at State expense.  He had in mind one or more witnesses, known to him only by nickname, who, if found, might have been interviewed in the hope that their testimony might help to establish as an alibi that the petitioner had been in a Revere night club at the time of the crimes.  The petitioner knew that he could take the stand.  Other defendants did so.

In *Allen* v. *Commonwealth*, 324 Mass. 558, this court said in 1949: "The provision in art. 12 of the Declaration of Rights that every subject shall have a right 'to be fully heard in his defence by himself, or his counsel, at his election' has never been deemed to require the court to appoint counsel, even if the defendant is indigent" (pages 560–561); "It must be regarded as settled by *McDonald* v. *Commonwealth*, 173 Mass. 322, 324, 327, that neither in its constitutional nor in its statutory provisions does the law of this Commonwealth require that a person charged with other than a capital offence be furnished counsel" (pages 561–562).  On the same day this court said: "Article 12 of the Declaration of Rights does not require that counsel be furnished, and we may add that no statute requires it in noncapital cases." *Commonwealth* v. *Blondin*, 324 Mass. 564, 568.

In the cases just cited there were no findings of intellectual inferiority.  In fact, the reverse was true.  Consequently, no question was presented under that portion of art. 12 which commands that "No subject shall be . . . put out of the protection of the law . . . or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land."  As stated in an opinion of this court by Chief Justice Rugg, art. 12 "is one of the great landmarks of human freedom. . . . It is an additional shield to protect rights declared in art. 10.  The right asserted by the defendant under the Fourteenth Amendment to the Constitution of the United States is substantially the same as that secured under these articles of the Declaration of Rights and is conferred by nearly the same words. *Commonwealth* v. *Strauss*, 191 Mass,

545, 550." *Attorney General* v. *Brissenden,* 271 Mass. 172, 184. And on occasion this court has said of these articles of the Declaration of Rights that the Constitution of the Commonwealth contains safeguards "at least as strong as those of the Fourteenth Amendment to the United States Constitution." *Pizer* v. *Hunt,* 253 Mass. 321, 332. *Universal Adjustment Corp.* v. *Midland Bank, Ltd.* 281 Mass. 303, 320. *King* v. *Grace,* 293 Mass. 244, 247. *Lowell Gas Co.* v. *Department of Public Utilities,* 324 Mass. 80, 87. In short, the words "the law of the land" in art. 12 which were taken from Magna Charta embrace all that is comprehended in the words "due process of law" in the Fourteenth Amendment. *Jones* v. *Robbins,* 8 Gray, 329, 342–347. *Commonwealth* v. *Gedzium,* 259 Mass. 453, 458. *Murray's Lessee* v. *Hoboken Land & Improvement Co.* 18 How. 272, 276.

In *Allen* v. *Commonwealth,* 324 Mass. 558, we had occasion also to consider the due process clause of the Fourteenth Amendment as interpreted in the Supreme Court of the United States. We there said, at page 562: "We accept the law as fixed at the point now reached by actual majority decisions of the court. To the best of our understanding the law so determined does not require the assignment of counsel in every noncapital case, even though the charge be a serious one. That law, as we understand it, requires assignment of counsel in noncapital cases only when the defendant, by reason of youth, inexperience, or incapacity of some kind, or by reason of some unfair conduct by the public authorities, or of complication of issues, or of some special prejudice or disadvantage, stands in need of counsel in order to secure the fundamentals of a fair trial." Reliance was placed particularly upon *Betts* v. *Brady,* 316 U. S. 455, *Foster* v. *Illinois,* 332 U. S. 134, *Bute* v. *Illinois,* 333 U. S. 640, and *Uveges* v. *Pennsylvania,* 335 U. S. 437. This statement was quoted in *Commonwealth* v. *Blondin,* 324 Mass. 564, 568.

Clearly the petitioner, a high grade moron at about the border line of feeble-mindedness, was subject to that "incapacity of some kind" which required the assignment of

counsel "in order to secure the fundamentals of a fair trial."
It would be idle to labor the point. See *Williams* v. *Kaiser*,
323 U. S. 471; *Uveges* v. *Pennsylvania*, 335 U. S. 437, 441;
*Wade* v. *Mayo*, 334 U. S. 672; *Gibbs* v. *Burke*, 337 U. S.
773; *Palmer* v. *Ashe*, 342 U. S. 134; *Massey* v. *Moore*, 348
U. S. 105. We cite these cases by way of analogy. We rest
our decision upon art. 12 of the Declaration of Rights.

> *Judgments reversed.*
> *Verdicts set aside.*
> *Cases remanded to Superior Court.*