COMMONWEALTH *vs.* JOHN G. HANLEY.

Worcester. December 2, 1957. — April 16, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Practice, Criminal,* Speedy trial; Waiver; Continuance; Exceptions: whether error harmful, whether error shown. *Constitutional Law,* Speedy trial, Waiver of constitutional rights. *Waiver. Evidence,* Of another crime. *Error,* Whether error harmful, Whether error shown.

Article 11 of the Declaration of Rights of the Massachusetts Constitution gives the defendant in a criminal case a right to a speedy trial even if he is in prison serving a sentence for another crime. [387]

The constitutional right of the defendant in a criminal case to a speedy trial is a personal one and may be waived, and is waived by implication through failure to demand prompt trial in the absence of circumstances negativing such implication. [387–388]

There was no error in the denial of a motion to quash an indictment on the ground that the defendant had been denied his constitutional right to a speedy trial where it appeared that he filed the motion shortly before the commencement of his trail three years and two months after the indictment, that two years and four months before the trial he was sentenced to State prison in Massachusetts for an unrelated offence and was confined there up to the time of trial, and that he had made no demand for prompt trial and had rejected opportunities to have the court appoint counsel for him and of his own choice conducted his own case without counsel, manifesting familiarity with applicable law: there was nothing to negative the implication that he had waived his constitutional right. [388]

Definite assignment by the court of trial of an indictment for a date two weeks later than the trial date previously assigned provisionally and commencement of the trial on the later date deprived the defendant of no constitutional right. [389]

The disposition of a motion by the defendant in a criminal case, who proposed to conduct his case without counsel, for a postponement of trial on the ground of his ill health through a chronic condition rested in the discretion of the trial judge. [389–391]

It was error at the trial of an indictment to allow a police officer to testify that he had spoken to the defendant in "State prison," since such

testimony would tend to show a conviction of the defendant for another crime, but such error was not reversible error in view of other evidence admitted without objection or introduced by the defendant himself and of a clear and forceful instruction by the trial judge to the jury to disregard all references to other trials or to places of detention. [391–395]

No error was shown at the trial of an indictment in the exclusion by the judge of a document offered by the defendant which was not marked for identification and the contents of which were not indicated by anything in the record. [395–396]

INDICTMENT, found and returned on August 20, 1952.

The case was tried in the Superior Court before *Meagher*, J.

*Francis B. Kenney & Joseph J. Balliro*, for the defendant.

*A. Andre Gelinas*, District Attorney, (*Charles N. Dewey*, Assistant District Attorney, with him,) for the Commonwealth.

WHITTEMORE, J. This is an appeal, under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended.

The defendant was indicted in Worcester County on August 20, 1952, on the charge of being an accessory before the fact to an armed assault with intent to rob on November 25, 1951. The defendant was arrested in Rhode Island in May, 1953, and was held under indictments from Bristol and Worcester counties. He was promptly tried in Bristol County under the indictment there, for an unrelated offence, and was found guilty and sentenced to the State prison at Charlestown. He was committed under that sentence on June 29, 1953, and has been in Massachusetts custody since that time.

The defendant was arraigned in Worcester County, under the indictment of August 20, 1952, on May 16, 1955. He then moved to quash the indictment on the ground of delay in bringing him to trial. This motion was denied on June 8, 1955, after hearing. No exception was saved. On October 4, 1955, the defendant moved to quash the indictment on the ground that trial would deprive him of his rights under the Declaration of Rights of the Massachusetts Constitution and under the Fourteenth Amendment to the Constitution of the United States. The argument disclosed that the

ground of the motion was delay in trial. The motion was denied on October 17, 1955, and the defendant's exception was saved. On October 17, 1955, the defendant moved for a postponement because of ill health. The court denied the motion and saved the defendant's exception. Another exception relates to the admission of evidence that the defendant was confined in the State prison. Other exceptions relate to the conduct of the trial which began on October 17, 1955, and resulted in a verdict of guilty on October 21, 1955. Other facts are stated in the following paragraphs.

1. There was no error in the denial of the October motion to quash the indictment.

The defendant by his own choice was tried without an attorney acting for him. He rejected in May, 1955, and again in September, 1955, the opportunity of having the court appoint counsel for him. To several questions about the matter in September his answer was only "I have no comment." The defendant should take no advantage because of his rejection of the opportunity to have counsel, but in the circumstances we dispose of the issue of delay and the other issues before us on substantive grounds so far as we can do so without giving the defendant such an advantage. Thus we pass the Commonwealth's points that the motion did not set forth the reasons relied on (G. L. [Ter. Ed.] c. 278, § 17; *Commonwealth* v. *Schaffner*, 146 Mass. 512, 514) and that the contention should have been made by plea in abatement as the record itself does not show that the defendant was available for trial. *Lebowitch, petitioner*, 235 Mass. 357, 362. We do not think that G. L. (Ter. Ed.) c. 278, § 27 ("Decisions of the superior court upon questions raised upon a plea in abatement to an indictment or complaint shall be final"), can operate to deprive the defendant of a review of a decision so far as it involves a constitutional right. The essential facts were not in dispute and this sufficiently answers the Commonwealth's contention of lack of verification of, or agreement on, facts. We pass also the point that the decision of June 8, 1955, to which no exception was taken settled the issue against the

defendant, at least for the significant part of the period of delay of two years and five months.

Article 11 of the Declaration of Rights declares: "Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws." We think the second sentence of this article gives a defendant in a criminal case a right to a speedy trial.

Three reasons have been suggested for according an accused a speedy trial: (1) to protect the accused from prolonged preliminary imprisonment; (2) to relieve him of anxiety and public suspicion attendant upon an untried accusation; and (3) to insure that means of proving his innocence will be within his reach by minimizing the possibility of witnesses becoming unavailable and their memories dulled. *People* v. *Prosser*, 309 N. Y. 353, 356. The third of these reasons is applicable to persons in prison for other crimes, and in any event the protection of the Declaration of Rights extends with equal force to them.

The right is a personal one and may be waived. In the absence of special circumstances or controlling statute the rule elsewhere is that failure of the defendant to demand trial constitutes waiver. *Shepherd* v. *United States*, 163 Fed. (2d) 974, 976–977. *Fowler* v. *Hunter*, 164 Fed. (2d) 668, 670. *People* v. *Scott*, 74 Cal. App. (2d) 782, 784. *State* v. *Boynton*, 143 Maine, 313, 323. *State* v. *O'Leary*, 25 N. J. 104, 111–112. *State* v. *Lydon*, 40 Wash. (2d) 88, 90. Cases cited in annotation 129 A. L. R. 572, 587. In some States a statute sets a specific period within which the accused must be brought to trial unless the accused is the cause of the delay or the prosecution shows good cause. See *State* v. *Carrillo*, 41 Ariz. 170; *People* v. *Prosser*, 309 N. Y. 353; *State* v. *Chadwick*, 150 Ore. 645; *Flanary* v. *Commonwealth*, 184 Va. 204; *Ex parte Chalfant*, 81 W. Va. 93.

Our statute places upon a person held under an indictment

an obligation to ask for speedy trial as a condition of being bailed upon his own recognizance. General Laws (Ter. Ed.) c. 277, § 72, provides: "Whoever is held in custody upon an indictment shall, if he requires it, either be tried at the sitting of the court next after the expiration of six months from the time when he was imprisoned or be bailed upon his own recognizance, unless the court finds that the witnesses on behalf of the government have been enticed or kept away or have been detained and prevented from attending the court by illness or inevitable accident." This statute of course is not applicable to this case as the defendant was not being held under the indictment now before us.

In *Lebowitch, petitioner,* 235 Mass. 357, 363, we said that even constitutional rights must be seasonably asserted.

We think that the full intent of the constitutional protection will be afforded by a rule that in the absence of a showing of circumstances which negative the implication, the failure to demand prompt trial implies a waiver of the right thereto. We need not consider what personal incapacities (see *Pugliese* v. *Commonwealth,* 335 Mass. 471) or physical restraints or other deterrents of action (see *United States* v. *Chase,* 135 Fed. Sup. 230), or what other circumstance in the particular case, would be sufficient to negative the implication of waiver. There is in this case no suggestion of any circumstance which might be deemed to negative the implication. The suggestions are of contrary import. The defendant asserted that two years earlier he had an attorney and was ready for trial. In the conduct of his own case he referred to Federal and State constitutions, and to court decisions and legal treatises, and he manifested familiarity with applicable law. Conceivably it could be concluded that the defendant was not averse to a delay, while he was in custody anyway, which might give support to such motions as were made.

We need not determine the effect of waiver in a case where there is such a long delay as to give rise to the presumption that a fair trial could not be had, or the effect of other extraordinary circumstance, notwithstanding a waiver. There

was no such delay or circumstance here. Compare *United States* v. *Chase,* 135 Fed. Sup. 230.

The defendant asserted in the course of examination of witnesses at the hearing on the May, 1955, motion that he had written to the clerk two years before demanding trial. There was no sworn testimony; the statement was uncorroborated; the judge was not obliged to give it credence. There is no record of an application or motion prior to May, 1955.

The court on May 16, 1955, made provisional assignment of the case for trial on October 3, 1955. Manifestly the continuance from October 3 to October 17, 1955, or, as the Commonwealth states it, the definite assignment for that date, deprived the defendant of no constitutional right.

2. No error is shown in the denial of the defendant's motion for postponement due to ill health. He asked for a continuance for that reason on October 17, 1955, and was examined on the evening of that day by a physician at the State prison whose report concluded as follows: "Examination this night reveals him to be nervous and tense. It is my feeling that this man is physically able to stand trial at this time. It must be remembered, however, that the chronic conditions as stated above may flare up at any time."

The report showed that the defendant had been in the State prison colony hospital at Norfolk from August 14, 1955, to September 7, 1955, and thereafter in the dispensary at the State prison, that he had chronic epididymitis (inflammation of tube in testicle) and chronic prostatis; that "during past months [he] has been on antibiotics which bring the condition under control but do not cure the condition." A temperature of 100° on September 7 was noted, and pain. The report also stated: "During the past month this man has had three trips to court, and was nervous and exhausted when he returned to this institution on each occasion."

There is in the transcript before us indication that the judge had been informed that the officer in charge of the

defendant had been given phenobarbital tablets which he might have to give the defendant, and on at least two occasions had been told by the officer of the defendant's pain or diarrhea on the way to court in Fitchburg from the State prison in Charlestown.

Such a report from the physician and such information manifestly required the most careful appraisal by the trial judge of all relevant circumstances particularly as the physician gave no opinion of the defendant's ability to act as his own attorney. Relevant circumstances included the then physical aspect of the defendant and his presentation of his own case on preliminary motions on prior appearances before the court in the period of his illness. He participated in argument and colloquy on September 19, 1955, October 11, 1955, and October 17, 1955. The transcript of the defendant's argument on October 17 on his motion to quash covers about twelve and one half pages. The transcript shows that after the jury were empanelled and the indictments read, the defendant said, "Your Honor, I made mention of the fact of my condition. I don't want to go to trial at this time because of my condition. I move the court to have a doctor examine me."

We assume the mention of condition was at some time earlier in the course of the proceedings on October 17. But the court on that day and in the preceding month had had an excellent opportunity to determine the effect of the defendant's condition on his ability not only to stand trial but to handle his own defence.

The transcript of his arguments and remarks is adequate support for a conclusion that there was no impairment of his mind or his ability to use it. The judge might properly weigh the tactical plan of the defendant, so far as demonstrated, and the fact, as shown by the physician's report, that the condition was chronic.

A decision on such a motion is peculiarly in the trial judge's discretion. *Commonwealth* v. *Soaris*, 275 Mass. 291, 297. *Commonwealth* v. *Chapin*, 333 Mass. 610, 616–617. See *Commonwealth* v. *Klangos*, 326 Mass. 690, 691.

There is no indication in the transcript of the evidence that the defendant's condition had an effect on his conduct of the case. We assume that the deliberate decision to go to trial without counsel operated to his disadvantage. We cannot, however, attribute demonstrated inexpertness as an advocate to the physical illness.

3. The defendant contends that he was prejudiced by reference to his confinement in the State prison. The sequence is as follows: "Q. [by the district attorney to a police officer] And was it the last time you have talked with him. A. Except the same date I had talked with Drolet. THE DEFENDANT: I object, Your Honor. THE JUDGE: I don't know. What is your objection? What do you object to, the answer, the question, or what? THE DEFENDANT: The question he's asking him. THE JUDGE: Would you read the question? THE DEFENDANT: I'm assuming his answer. I don't believe the jury should hear his answer. . . . THE JUDGE: What do you object to? THE DEFENDANT: I don't know where he spoke to me. THE JUDGE: He hasn't answered that yet. Your objection must be pointed specifically to a question or an answer. Go ahead, next question. Q. Where was it that you spoke with Mr. Hanley the last time? A. State prison, Charlestown. THE DEFENDANT: I object, Your Honor. THE JUDGE: What is your objection? THE DEFENDANT: The statement he just made, it isn't pertaining to the conviction or indictment I'm being tried on here. It isn't beneficial to my case for the jury to hear that I'm in State prison. It hasn't been brought out. I haven't taken the stand. THE JUDGE: The jury will draw no inferences from the fact that he talked to you in a police station or anywhere else. That is of no concern. State prison or anywhere else, it is no part of the case so far as the prosecution is concerned. They will draw no inference. Go ahead." The defendant excepted.

The objection was seasonably taken. The defendant had made it apparent that he anticipated that the statement of the place of the talks would be prejudicial. The Commonwealth's contention that the defendant elicited the hurtful

answer by saying "I don't know where he spoke to me" disregards the prior colloquy.　In the context it is manifest that the defendant was intending to convey that he feared a revelation of the place of the talk.　The witness had already testified to a talk with Drolet at the State prison "around October, 1953."　There is no subsequent examination to suggest any purpose of the question other than to show where the defendant was at that time.　The question should not have been asked or the answer received.

There were other references to other possible offences or to confinement, to some of which objection, but no exception, was taken, as follows:

In the district attorney's opening: "THE DISTRICT ATTORNEY: There will be testimony to the effect that he had met the tipper Guglielmello in the Worcester House of Correction at some time and was acquainted with him and knew him.　THE DEFENDANT: I object, if Your Honor please.　THE JUDGE: What is the objection?　THE DEFENDANT: May the jury be excused, Your Honor?　THE JUDGE: State your objection.　What are you objecting to in the first place?　THE DEFENDANT: The district attorney alleged I had met someone in the house of correction, Your Honor.　THE JUDGE: What is your objection?　THE DEFENDANT: My objection is, I don't believe he has any right to make such allegations.　THE JUDGE: It may stand at the present moment.　This is the opening, this is not evidence.　·The jury will be instructed . . . that it is merely a statement as to what the testimony is which the district attorney expects to present.　It is not evidence, and is not to be considered by them as evidence."　In the course of trial prior to the question to which objection was taken a witness had testified he had seen the defendant in the Pawtucket police station. He was asked, "Do you know whether . . . he was under arrest from any other authorities and not the Worcester authorities?"　He, answered, "Well, I received information that he had been . . .."　The defendant objected and the answer was excluded.

Later in the trial after the objectionable reference to the

State prison the defendant's brother was asked, "Well, don't you know that in 1950 he [the defendant] was serving a sentence in the house of correction in New Bedford?" The answer and following sequence were: "No, I didn't know that. Q. You didn't know that your brother had been in the house of correction in New Bedford? A. Oh, yes I did. I got your question wrong." The defendant did not object.

At the opening of court on October 18, and before any evidence was taken, in the presence of the jury the judge said, "Mr. Hanley, with reference to this communication . . . from the State prison medical department . . . ." The judge then read the concluding paragraph of the physician's report as set out above.

In the defendant's recross-examination of Bistany, the first witness, there is the following sequence: "Q. Did you testify in a Fall River robbery at the trial there against the defendants as a Commonwealth witness? A. Yes, when you went on the lam. . . . Q. Did you testify at the Mechanics Bank robbery trial as a State witness . . . A. I did, against the same gang. Q. Did you testify against the defendants in the Federal court in Boston on a bank robbery? A. The same gang."

In the charge the judge said, "There has been some reference here in this particular case as to the fact that certain interviews were had at jails or State prison or some other place of that nature. You will disregard it completely. It is of no concern of yours; where the defendants are or were, or anything else. In this great country of ours every man who stands before the bar of justice is presumed to be innocent until proven guilty. We do not care where he comes from, where he has been, or what he is. There have been some references to prior trials. Disregard it. These two defendants, these two gentlemen are being tried here for this offence. Any prior trial is no concern of yours, no matter what it might be, as to whether they were involved or were not involved. But as far as any prior trial in this county pertaining to these two particular individuals, these two defendants, there has been none. This is the trial."

Evidence, in a criminal case, of conviction of other crimes is manifestly prejudicial. *Commonwealth* v. *Jackson,* 132 Mass. 16. *Commonwealth* v. *Kosior,* 280 Mass. 418, 423. *Commonwealth* v. *Stone,* 321 Mass. 471, 473. *Commonwealth* v. *Valcourt,* 333 Mass. 706, 717–718. *Commonwealth* v. *Banuchi,* 335 Mass. 649, 654.

The allowance of the objectionable question here had the effect of making it somewhat more likely that the jury would believe that the defendant had been convicted of another offence, even though there was no direct statement of such a fact. It led to a colloquy in which the defendant, inexpertly, tended to confirm the fact in stating the obvious objection. But the force of the evidence "must be regarded in conjunction with substantially similar evidence which had been adduced at the trial without any objection of the defendant . . . [or] voluntarily introduced in behalf of the defendant." *Commonwealth* v. *Capalbo,* 308 Mass. 376, 382. The jury, without objection or exception, were informed that the defendant was examined in the State prison medical department October 17, 1955, and that in 1950 he was serving a sentence in the house of correction. The defendant's prior examination of Bistany inevitably suggested to the jury the thought that the defendant had been tried elsewhere for other crimes. The questions were ambiguous as to who was meant by "the defendants" but it was open to the jury to conclude that Hanley was inquiring about the defendants then on trial in Worcester, at least as to one or two of the trials referrred to.

The defendant is not shown to have been under any disability which would have required that there be either court appointed counsel or an avoidance of error which presence of counsel would, in all likelihood, have obviated. Compare *Pugliese* v. *Commonwealth,* 335 Mass. 471; *Brown* v. *Commonwealth,* 335 Mass. 476. The defendant should not be allowed to capitalize on inadvertent error, resulting from his stubborn choice to proceed without help. In the circumstances this case is before us as would be any other criminal appeal. We think that, in view of the unobjected

to testimony and medical report and the testimony which the defendant himself injected into the case, the effect of allowing the jury to know that there was a talk with the defendant at the State prison in October, 1953, was at most cumulative and that, in view of the instruction, it was not reversible error. *Commonwealth* v. *Capalbo*, 308 Mass. 376, 383. Compare *Commonwealth* v. *Banuchi*, 335 Mass. 649, 654. Wharton's Criminal Evidence, 584.

In review, it is manifest that there were on several occasions in the course of the trial references to places of detention and implications of other crimes which should not have been in the case and could and should have been avoided. The defendant, however, was in part responsible and in the circumstances the clear and forceful direction of the judge to the jury to disregard them is controlling of the claim of prejudicial error. The judge's instruction was so cast as to impress the jury with its high importance and it is to be assumed that it was followed.

4. The defendant assigns error in the refusal of the judge to allow him to introduce certain evidence to offset the inference of consciousness of guilt which the jury may have arrived at after the prosecution presented evidence that he had not been found after indictment. Such evidence is admissible and its exclusion is a ground for a new trial where there is an offer of proof. *Commonwealth* v. *Goldberg*, 212 Mass. 88, 91. See *Commonwealth* v. *Cataldo*, 326 Mass. 373, 376. However, there is nothing in the record to indicate the contents of the offered document and hence to show us that the trial judge's ruling on admissibility was not correct. *Commonwealth* v. *Granito*, 326 Mass. 494, 497. *Commonwealth* v. *Perry*, 254 Mass. 520, 529. See *Commonwealth* v. *Bingham*, 158 Mass. 169, 171.

The defendant in effect made an offer of proof: "THE DEFENDANT: Now, Your Honor, I'll offer this into evidence. THE JUDGE: All right, I'll see it. THE DEFENDANT: To show proof that — THE JUDGE: Wait just a minute, let me look at it before you make any speeches. . . . [The district attorney and the judge look at the paper.] Excluded.

THE DEFENDANT: May I take an exception, Your Honor?" The document should have been marked for identification and its contents, or a summary, made available for the record here. In the absence of such we cannot rule there was error.

5. The defendant in the supplemental brief, filed by him personally, asks our attention to exceptions taken at the hearing on July 6, 1956, to establish the transcript. We see no error at that hearing.

6. The defendant was represented by counsel before this court. No exceptions other than those discussed have been briefed or argued. We see no prejudicial error in the record or reason to conclude that the defendant was not afforded a fair trial.

*Judgment affirmed.*