EDWARD PETER KEENAN, JR., *vs.* COMMONWEALTH.

Suffolk. November 4, 1963. — December 5, 1963.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Practice, Criminal,* Plea. *Constitutional Law,* Due process of law. *District Attorney.*

In the circumstances, a defendant indicted for second degree murder and other serious offences, as to which the only possible defence was insanity, was not denied due process of law where, after the district attorney had "recommended" his pleading guilty and had stated that "if he learned to read and write in prison, and behaved himself otherwise" the district attorney "would help him in every way he could and 'reopen the case' in five to seven years with a view to obtaining" his release from prison, and after the defendant's competent and experienced counsel, his mother and a friend had urged him to plead guilty in view of the district attorney's statements, he reluctantly did so plead in reliance on the statements. [536–538]

Where one sentenced to life imprisonment had pleaded guilty in reliance on statements by the district attorney to the effect that in due course and on certain conditions the district attorney would do what he could to assist him in obtaining his release from prison, it was to be expected that the district attorney's successor in office, some years later, would give due consideration to such undertaking of his predecessor in acting in relation to efforts of the prisoner's counsel to obtain his release, although there had been no denial of due process in connection with the plea of guilty and the prisoner was not entitled to a reversal of his sentence on writ of error. [539]

PETITION for writ of error filed in the Supreme Judicial Court for the county of Suffolk on October 16, 1962.

The case was reserved and reported by *Reardon, J.*

*Monroe L. Inker* for the petitioner.

*James W. Bailey,* Assistant Attorney General, for the Commonwealth.

CUTTER, J. Keenan seeks by writ of error, petition for which was filed October 16, 1962, to vacate judgments and

sentences arising from his plea of guilty to four indictments, three of which were for assault with intent to murder and one of which was for murder in the second degree. On October 5, 1954, he was sentenced to life imprisonment upon the second degree murder indictment and for varying terms of years for the assaults.

A single justice made findings of fact and reserved the case on the pleadings, the assignments of error, the return, and the findings for the consideration of the full court. The facts are stated upon the basis of the findings.

Keenan, in respect of the indictments, was represented by the late Mr. Herbert F. Callahan, a lawyer with great experience in criminal matters. He had been retained by Keenan's mother. The Commonwealth was represented by District Attorney Hugh A. Cregg, also now dead.

"Prior to October 5, 1954, there were . . . conferences between the two attorneys and . . . [Keenan's] mother relative to disposition of the indictments at no one of which [conferences] . . . [Keenan], then twenty-one years of age, was present. A few days before the . . . trial a [final] conference was held in Mr. Cregg's office . . . [at] which in addition to the district attorney . . . [Keenan's] counsel and his mother, there was in attendance . . . [Richard] Treadway, a friend and employer of . . . [Keenan's stepfather] and [a] former employer of . . . [his mother]. The discussion revolved around the fact that . . . [Keenan] was intoxicated at the time of the killing and . . . that the only possible defense was . . . insanity. There was discussion of the probability of . . . [Keenan's] commitment . . . to Bridgewater if this . . . defense proved successful" with possible "[p]sychiatric damage to" Keenan. "Consideration was given to the fact that . . . [Keenan] could not then read or write and that he might learn to do so while imprisoned. The District Attorney recommended that . . . [Keenan] plead guilty to the second degree murder indictment, and stated that if he learned to read and write in prison, and behaved himself otherwise he would help him in every way he could and 'reopen the case' in five to seven years with a view to obtaining . . . [Keenan's]

release from prison. He said further he would make appropriate notations to this effect on the petitioner's 'record.' . . . [Keenan's] counsel averred that he would make a similar notation in his file . . . . No such notations have been discovered.'' Keenan's "mother was reluctant at first to have him plead [guilty] but finally was convinced that he should do so on the basis of her understanding of the undertakings of the others present . . . . From the conference . . . [Keenan's] counsel, mother and . . . Treadway went directly to the jail . . . and convinced him in the face of extreme reluctance on his part that he should plead guilty. This he did on October 5, 1954. Prior to sentence the crime was fully described by various witnesses . . . . [Keenan's] counsel, in argument . . . stressed the opportunity which would be afforded to . . . [Keenan] in prison to learn to read and write, and acquire a competence in some trade. He further stated that 'at sometime in the future there might be a chance of doing something for the young man.' The district attorney's statement to the court prior to sentence made no reference to any educational program'' for Keenan, who can now read and write.[1]

1. The Commonwealth does not contend that a writ of error will not lie in this case where the petition and assignments of error assert facts which raise a substantial question whether, in a matter going to the basis of the sentence (which is the judgment, see *Whitney* v. *Commonwealth*, 337 Mass. 722, 723), Keenan has been denied due process of law. See *Garabedian* v. *Commonwealth*, 336 Mass. 119, 124–126; *Sandrelli* v. *Commonwealth*, 342 Mass. 129, 143; *Letters* v. *Commonwealth, ante,* 403, 405–406.[2] The vital issue is

---

[1] The single justice concluded that Keenan's plea was made ''with reluctance and only after he had been persuaded by statements on which he relied that by doing so, learning to read and write in prison, and maintaining good behavior . . . , he would be given every assistance by the district attorney, his counsel and . . . Treadway to the end that he would be released within a period of from five to seven years.''

[2] See also *Allen* v. *Commonwealth,* 324 Mass. 558; *Lindsey* v. *Commonwealth,* 331 Mass. 1, 2, 5; *Drolet* v. *Commonwealth,* 335 Mass. 382; *Pugliese* v. *Commonwealth,* 335 Mass. 471; *Brown* v. *Commonwealth,* 335 Mass. 476, 479; *Guerin* v. *Commonwealth,* 337 Mass. 264, 268; *Guilmette* v. *Commonwealth,* 344 Mass. 527, 529; Bernardin, Writs of Error in Criminal Cases, 47 Mass. L. Q. (No. 1) 37, 40.

whether there has been such governmental inducement of Keenan's plea as to make it in effect involuntary and voidable despite the fact that he was represented by able counsel of his own choosing.

2. There is no basis in the facts found for concluding that Keenan's confession was in any sense coerced. The *Guilmette* case (344 Mass. 527) and the *Letters* case (*ante,* 403) have no application here. To us, the fair implication of the findings is apparent. A competent lawyer, experienced in the defence of persons charged with crime, found himself confronted with a difficult case, to which the only possible defence could be insanity. The district attorney was certainly not unreasonable in refusing, at Mr. Callahan's request, to reduce the major charge to manslaughter, for one man had been killed and three others assaulted. Yet the district attorney was prepared to assist Keenan "with a view to obtaining . . . [his] release" from prison "if he learned to read and write . . . and behaved himself otherwise." Mr. Callahan, Keenan's mother, and Treadway obviously decided that a plea of guilty with this assurance was the best course for Keenan to pursue. No lawyer could reasonably believe that the district attorney's contingent willingness to be helpful, even if expressed as an offer to "reopen the case," could possibly mean more than that the district attorney in five to seven years would lend his support to efforts to having Keenan released on parole or by executive clemency (or by a combination of the two methods), *if* then rehabilitated and *if* he could then read and write. No other methods of release would then be available and it is inconceivable that Mr. Callahan did not know this.

In such a matter, where a district attorney, without threat or coercion, discusses a possible plea with competent defence counsel (and not directly with an unrepresented person charged with crime) the defendant must be taken to be bound by his counsel's knowledge. We must assume that Keenan's counsel made clear to him that the district attorney could only assist (and could not be the controlling

force) in obtaining Keenan's release from prison, by parole or as the consequence of executive clemency. The district attorney obviously had a good case which he was prepared to try. He stated fairly and intelligibly to Mr. Callahan, the only person with whom he was entitled to discuss a possible plea, just how far he was prepared to go in helping at any time to relieve Keenan of the consequences of his criminal acts. The record does not indicate any expression of dissatisfaction by Mr. Callahan with what the district attorney did or said at the time of sentence. The district attorney's conduct seems to us to furnish no basis for saying that Keenan has been denied due process of law.

Keenan relies on various cases where there has been discussion of the question whether sentences (based upon pleas of guilty) should be set aside because of prosecutors' promises. These cases are not controlling in the present situation. In *Machibroda* v. *United States,* 368 U. S. 487, 493, it was said, "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack. . . . 'A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.' *Kercheval* v. *United States,* 274 U. S. 220, 223." In the *Machibroda* case, there were allegations that the defendant had been threatened (not present here) and that agreement as to sentence had not been disclosed to the trial judge. In *United States* v. *Lester,* 247 F. 2d 496, 500 (2d Cir.), there was indication of affirmative misrepresentation by a prosecutor of what the sentence would be, made to a defendant not represented by counsel. See also *People* v. *Sullivan,* 276 App. Div. (N. Y.) 1087, 1088 (failure of judge to carry out at sentence promise made at the time

plea was made); *People* v. *Jordan,* 283·App. Div. (N. Y.) 759 (alleged promise of suspended sentence requires trial of issue of fact in coram nobis proceedings). Keenan also refers to one case which seems consistent with the result which we reach. See *People* v. *Vance,* 7 App. Div. 2d (N. Y.) 661 (competent counsel represented defendant, so coram nobis proceeding not available as remedy).

3. Keenan is not now entitled as matter of law to a reversal of the judgments. Nevertheless, the findings disclose a situation which calls for fair action by representatives of the Commonwealth. Keenan in 1954 appears to have relied upon the conditional offer of the district attorney in making his plea of guilty. The district attorney has died, without making any notation of his position so far as can be discovered. The findings have established that the offer of help was made. It is for Keenan's counsel to decide what steps to take to seek his client's release. We have no doubt that, when the matter comes before the present district attorney, he will act with the undertakings of his predecessor fully in mind, and that other officials concerned will give due consideration to the findings.

*Judgments affirmed.*