IVAN W. BROWN *vs.* COMMONWEALTH.

Suffolk.     January 8, 1957. — February 27, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Constitutional Law,* Due process of law, Assistance of counsel, Self incrimination. *Practice, Criminal,* Assistance of counsel. *Error, Writ of. Evidence,* Competency.

At the hearing on a writ of error to reverse the judgment in a criminal case, the transcript of the trial of that case was properly admitted and considered for the purpose of determining whether the plaintiff in error had had a fair trial. [479–480]

A defendant not represented by counsel when tried for serious noncapital offences was not accorded the fundamentals of a fair trial or due process of law as required by art. 12 of the Declaration of Rights of the Massachusetts Constitution by reason of the effect in combination of questioning of and elicitation of admissions from the defendant by the judge while the defendant was cross-examining a witness for the Commonwealth; of the judge's suggesting that the district attorney argue to the jury, and his arguing, notwithstanding his custom not to do so when the defendant was not represented by counsel; of the tenor of the charge to the jury respecting the defendant's not testifying in his own behalf; of remarks made to a juror by the judge after the juror had inquired whether the defendant had been given an opportunity to have counsel, to the effect that the juror should do his "simple duty without asking foolish questions" about something not his business or becoming "a sociologist or a sea lawyer"; and of the judge's considering, prior to sentence, untried charges pending against the defendant elsewhere. [482]

There was a violation of the constitutional privilege against self incrimination of the defendant in a criminal case where the judge, in charging the jury respecting the defendant's not testifying in his own behalf, while stating the statutory provision that no inference should be drawn against him therefrom, also said that such provision was made by the Legislature "because jurors might think that an honest man who had nothing to hide would be glad to come up here and tell his own story" and "out of tender solicitude for defendants." [482]

At a criminal trial where the defendant, not represented by counsel, was himself cross-examining a witness for the Commonwealth, questioning of the defendant by the judge respecting the subject matter of the cross-examination and elicitation of admissions from the defendant were a violation of his constitutional privilege against self incrimination. [483]

PETITION for a writ of error, filed in the Supreme Judicial Court for the county of Suffolk on February 7, 1956.

The case was reserved and reported by *Whittemore, J.*

*Edward J. Barshak,* for the petitioner.

*Samuel W. Gaffer,* Assistant Attorney General, for the Commonwealth.

*Mark DeW. Howe,* amicus curiae.

*LaRue Brown,* by leave of court, submitted a brief as amicus curiae.

WILKINS, C.J. The plaintiff in error, whom we shall call the petitioner, is serving three sentences of not exceeding seven nor less than five years, which were imposed in the Superior Court for Middlesex County on May 13, 1952. One indictment was for assault and battery by means of a dangerous weapon. Two indictments, one of which contained two counts, were for robbery while armed. All the indictments arose out of three taxicab operator robberies committed by a passenger on April 7, 18, and 21, 1952.

On February 7, 1956, the petitioner sued out a writ of error in this court, assigning as error that he, an indigent person, was tried in violation of his rights (1) under art. 12 of the Declaration of Rights of the Constitution of Massachusetts in that the trial judge failed to determine the need of counsel and to fulfil that need by assigning counsel; and (2) under the Fourteenth Amendment to the Constitution of the United States by reason of the conduct of the trial.

G. L. (Ter. Ed.) c. 250, § 9. The single justice reserved and reported the case without decision upon the petition, assign-ments of error, the return, the answer, and his findings of fact.

The facts appear in the single justice's findings. The petitioner was born in New Hampshire and was twenty-two years of age at the time of the trial. His father died when he was two years of age. When he was three or four years of age his mother became ill and he "went to an institution for a time." Thereafter he was in a foster home for two or three years and in an orphanage for about five years. When he was about thirteen years of age, following a court appearance, he was sent to an industrial school where he remained for about five years until 1947. He attended school through the sixth grade.

The petitioner had "various duties" in the army air force, serving overseas eighteen months, and was once brought before a "one-officer court," but no testimony was taken. In 1950 he pleaded guilty in Barnstable County to a charge of unauthorized use of a motor vehicle. There was no trial. Because of this incident he received an "undesirable discharge" from the army.

Later the petitioner married, and "held several jobs," living in Michigan and on Cape Cod. In Michigan he pleaded guilty to a charge of using profane language, but up to the time of the trial of these three indictments he had not been in court while a full trial occurred.

Prior to judgment the petitioner did not know that there was a provision of law for the summoning of witnesses at the expense of the Commonwealth,[1] "or of any of the other rights or privileges asserted in the assignments of error." In 1952 he knew of two possible witnesses who at the time of the hearing before the single justice he believed would have been available to support an alibi for two of the three armed robbery charges. One of them testified at a later trial in Suffolk County in which he was represented by counsel.

---

[1] G. L. (Ter. Ed.) c. 265, § 17, as appearing in St. 1943, c. 250, § 1; c. 277, § 66.

The applicable rule under art. 12 of the Declaration of Rights is stated in *Pugliese* v. *Commonwealth*, decided this day in reliance upon *Allen* v. *Commonwealth*, 324 Mass. 558, 562. There is a requirement of "assignment of counsel in noncapital cases only when the defendant, by reason of youth, inexperience, or incapacity of some kind, or by reason of some unfair conduct by the public authorities, or of complication of issues, or of some special prejudice or disadvantage, stands in need of counsel in order to secure the fundamentals of a fair trial."

We must first take up a contention of the Commonwealth that the single justice erred in admitting in evidence and in considering the transcript of the trial proceedings. Reliance is placed upon the undoubted general rule that findings of fact at a trial cannot be reviewed on writ of error, which is confined to matters of fact not heard and decided at the trial under review. In *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 376, Chief Justice Rugg, after stating the general principle, listed three examples of matters of fact which could be reviewed: minority of the defendant (*Johnson* v. *Waterhouse*, 152 Mass. 585); insanity of the defendant (*Hathaway* v. *Clark*, 7 Pick. 145); and death of the defendant and lack of authority of a purported agent to accept service (*Hanzes* v. *Flavio*, 234 Mass. 320, 327). "To the foregoing instances there have been added in recent years instances where the contention was made that the defendant had been wrongfully deprived of the assistance of counsel at the trial or was denied opportunity to prepare a defence. *Allen* v. *Commonwealth*, 324 Mass. 558. *Lindsey* v. *Commonwealth*, . . . [331 Mass.] 1. *Jones* v. *Commonwealth*, . . . [331 Mass.] 169. Those additions were made upon the same theory as that of the older cases, to wit, that issues of fact are not concluded by the trial where there was no legally sufficient opportunity to litigate them at the trial." *Aronson* v. *Commonwealth*, 331 Mass. 599, 602. A more recent instance is *Drolet* v. *Commonwealth, ante,* 382. We hold that an examination of the transcript was proper and essential to a determination of the issue whether

the petitioner, because he was without counsel, for some reason failed to secure the fundamentals of a fair trial.

There was evidence that the petitioner committed each robbery with the aid of what appeared to be a gun and what the victim thought was a gun. There was admitted in evidence a signed statement made to the police by the petitioner with respect to the second and third robberies. We do not find it necessary to set forth the findings concerning this matter or concerning certain others of the assignments of error.

One Atkinson, who was the victim of the April 21 robbery, testified on direct examination for the Commonwealth and identified the petitioner, as a passenger who directed him to stop and at gun point robbed him of $28. On cross-examination, the petitioner asked Atkinson if he was absolutely sure "that is the gun I held you up with" and "how can you identify the gun as the one," saying, "That's all you know, that that's the gun the officer took from me when he picked me up, is that right?" The witness remained positive in his identification of the gun although he had "just seen this part." In answer to further questions the witness stated that he did not know that there was no chamber in it, and "That is the gun they took away from the parking space." The following colloquy then occurred. THE JUDGE: "Mr. Brown, how many guns did you have on you when you were arrested?" THE PETITIONER: "I had that one." THE JUDGE: "I suppose that would be a reasonable inference." THE PETITIONER: "Yes sir, but I am trying to —" THE JUDGE: "If you had two or three on you, he might have difficulty. You were arrested a few minutes afterwards, weren't you?" THE PETITIONER: "Yes sir." THE JUDGE: "You only had one gun?" THE PETITIONER: "Yes sir." THE JUDGE: "Don't you think it is reasonable for him to infer?" THE PETITIONER: "Oh yes. Still I had the gun regardless. That's all sir."

At the close of the Commonwealth's case the ensuing colloquy occurred: THE JUDGE: "Are you going to take the stand, Mr. Brown? Do you want to testify? THE

PETITIONER: "No sir." THE JUDGE: "Have you any witnesses?" THE PETITIONER: "No sir."

The assistant district attorney in accordance with his practice where a defendant was not represented intended not to argue, and said, "In view of the fact, if your Honor please, that the defendant is not represented —" The judge then said, "You'd better argue, because there are three or four crimes involved — three different robberies and an assault. Is that it? . . . You might clear it up." The assistant district attorney then argued.

Immediately following the assistant district attorney's argument the judge made his charge to the jury, during the course of which he said: "The defendant hasn't taken the stand himself. That is a privilege he has if he wishes to avail himself of it, of taking the stand and telling his own story, but, in extending that privilege to defendants in criminal cases the Legislature provided that the failure of the defendant to avail himself of it should not be commented upon and that no inference against him should be drawn because he didn't take the stand because jurors might think that an honest man who had nothing to hide would be glad to come up here and tell his own story. But the Legislature, out of tender solicitude for defendants, provided that no inference should be drawn against any defendant because of his failure to take the stand, so that you are not to draw any inference against this defendant because he didn't take the stand here and testify as to whether he was the person involved in these alleged robberies and this assault."

While the jury were deliberating, the foreman submitted to the judge a note, the substance of which was that one member of the jury wanted to know if the defendant had been given an opportunity to have legal counsel before going to trial. The jury were recalled, and the following occurred. THE JUDGE: "Mr. Hopper, whose question is this?" THE FOREMAN: "The question is from Mr. Lerton, sir." THE JUDGE: "Didn't you understand the instructions

of the court?" THE JUROR: "I wasn't quite sure, your Honor." THE JUDGE: "Well, what weren't you quite sure of?" THE JUROR: "Whether the defendant was given —" THE JUDGE: "Well, didn't you understand the instructions of the court in regard to armed robbery and robbery?" THE JUROR: "Yes sir, that part, your Honor." THE JUDGE: "Well, what made you think this is any of your business? Can't you come here and do your simple duty without asking foolish questions? You go upstairs. You held up your right hand here and took an oath. Now, go upstairs and obey that oath and decide the case on the evidence, and don't become a sociologist or a sea lawyer. We have enough of those around. It is a foolish question. It is a waste of the time of the court. The court will do its duty. All it asks is that you do yours."

Prior to sentence the judge inquired about and considered charges of robberies against the petitioner pending in Suffolk County and not tried.

This outline of the course of a portion of the trial shows that the petitioner, whether guilty or not, was handicapped by a series of occurrences which hardly could have come to pass had he been represented by counsel. The result, we think, was an accretion of prejudicial happenings which added up to a failure to secure the fundamentals of a fair trial and hence to a violation of art. 12 of the Declaration of Rights. We need not attribute this effect to any one item of prejudice, but we do attribute such effect to them in combination. See *Townsend* v. *Burke,* 334 U. S. 736, 739; *Gibbs* v. *Burke,* 337 U. S. 773.

We think that there was a violation of art. 12 of the Declaration of Rights in other respects. We are of opinion that, read as a whole, the language of the charge concerning the failure of the petitioner to take the witness stand was repugnant to the spirit and purpose of the clause that no subject shall "be compelled to accuse, or furnish evidence against himself." As was said in *Commonwealth* v. *Maloney,* 113 Mass. 211, 214, "A bare literal compliance with the terms of this provision is not all that a defendant is entitled

to." See *Commonwealth* v. *Harlow,* 110 Mass. 411; *Commonwealth* v. *Scott,* 123 Mass. 239, 241; *Commonwealth* v. *Richmond,* 207 Mass. 240, 248–249. Likewise we think that the questions asked by the judge of the petitioner while he was cross-examining a witness in effect made him a witness, or forced him to make admissions, and, however viewed, were violative of the privilege against self incrimination.

> *Judgments reversed.*
> *Verdicts set aside.*
> *Cases remanded to Superior Court.*