ALBERT CORTELLESSO vs. COMMONWEALTH.

Suffolk.   April 1, 1968. — June 21, 1968.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Practice, Criminal,* Assistance of counsel, Continuance.   *Arrest.   Search and Seizure.*

On the record, a conviction for possession of burglarious instruments with intent to use them was not to be disturbed on writ of error by reason of the circumstances in which the defendant was arrested without a warrant beside an automobile on a street in an evening in 1962 for suspicious conduct with respect to a nearby fur store, or by reason of the fact that the case was assigned for trial and was tried on the day after retention of new defence counsel, who, in view of the attitude of the judge on the day of counsel's retention, did not inform the judge that the defence had not been adequately prepared by anyone and did not request a continuance, or by reason of the fact that burglarious instruments admitted in evidence at the trial had been found in a search of the automobile conducted some fifteen minutes after the defendant's arrest.

PETITION filed in the Supreme Judicial Court for the county of Suffolk on August 28, 1968.

The case was reserved and reported by *Whittemore,* J.

*Michael R. Pizziferri (Joseph A. Todisco* with him) for the petitioner.

*Willie J. Davis,* Assistant Attorney General (*Evan T. Lawson,* Legal Assistant to the Attorney General, with him), for the Commonwealth.

WHITTEMORE, J.   The issues on this petition for writ of error are reported by a single justice, without decision, on the pleadings, the return, the findings, and the transcript of evidence at the trial in the Superior Court in September, 1962, at which the defendant was convicted of possession of burglarious tools with intent to use them.

The petitioner contends that he was deprived of Federal constitutional rights in being required to proceed to trial without adequate assistance of counsel and in being convicted on illegally seized evidence, that is, the burglarious

tools. He specifies that newly engaged trial counsel was allowed but one day for preparation, and that the petitioner's possession of the tools was discovered by a search following an arrest on suspicion and hence without probable cause. See *Henry* v. *United States,* 361 U. S. 98 (1959); *Mapp* v. *Ohio,* 367 U. S. 643 (1961).

### THE ARREST, THE SEARCH AND THE POLICE INVESTIGATION.

We state the facts as found by the single justice, and in some instances as more fully shown in the transcript of the trial.

The petitioner and a codefendant were arrested in Springfield about 9:15 P.M. on February 20, 1962, beside an automobile, convertible model, bearing Rhode Island plates.

John B. Boyd, a local businessman, going to his store on Bridge Street earlier in the evening, had seen the two men and the automobile. His suspicions had been aroused by the out-of-State car, stopped, not parallel to the curb, with its motor running, near the Astmann fur store. He had tried to keep the car under observation and had followed it as it was driven around nearby streets. Boyd had taken the registration number and had twice telephoned the police. He had seen the car a second time stopped almost in front of the Astmann fur store and had seen the codefendant, bent down in front of the fur store window, looking under papers that were placed over whatever was in the window. Boyd had also seen the petitioner looking in the fur store window from the doorway and speaking with his companion there.

After abortive attempts to follow the car the police found it parked on Hillman Street. The officer spoke to the two men as they returned to the car. The petitioner, after identifying the car as his and showing the car registration in his wife's name, said in answer to further questions that he was in the area waiting for his girl friend who worked for the telephone company. It was then 9:15 P.M. The officer knew that the girls left the telephone building at ten, eleven, and

twelve o'clock. The car was somewhat removed from the telephone building. The officer told the men they were acting suspiciously and they were to go to the station for further questioning. An officer drove the Rhode Island car to the station. About 9:30 p.m. the police searched the car and found the tools and a marked map. The tools were in the depression of the convertible behind the area of the missing back seat and had not been observed before.

The petitioner testified that the police had looked in the trunk when he was first spoken to. He asserted that he had found the tools in the rear of a nightclub in Providence, Rhode Island.

The men were held at the police station on suspicion of committing a felony, and on February 23 they were arraigned on the charge of possession of burglarious tools with intent to use them. At the trial there was evidence, including the petitioner's own testimony, that, not long before, he had appeared at the Astmann store as a possible customer and had looked at furs with a woman companion; also that he had been allowed to go to the men's room in the basement. The tools were adequately identified as burglarious tools and the inference was strong that the intent was to use the tools to enter the fur store and steal furs. The evidence, it appears, had developed from prompt and careful police investigation.

### The Selection of the Trial Attorney and the Time for Preparation.

The case was tried by an attorney (hereinafter the trial attorney) engaged on the day preceding trial in the following circumstances.

The petitioner and his codefendant had been represented by another attorney for several months beginning with their arraignment in the lower court. The petitioner came to court on September 12 expecting to be represented by that attorney but the petitioner was an hour and a half late in appearing; it was his fault; he had been at fault in

respect of appearances at earlier times. His counsel, reason-
ably in view of his obligation to the court, withdrew his
appearance when the case was called and the petitioner was
not present. When the petitioner arrived and the attorney
told him he had withdrawn, the petitioner asked for a post-
ponement. The judge asked the attorney to repeat what he
had told the judge. The attorney stated his difficulties in
attempting to reach the petitioner to prepare the case and
the latter's failures to appear. On inquiry by the judge the
attorney said he would refile his appearance if ordered to
do so but he preferred not to. The judge did not so order
and set the case for trial on September 13.

A principal reason for the reluctance of the attorney to
reappear for the two defendants was the nonreceipt of the
full amount of stipulated fees. The petitioner had made
such payments as the attorney had received.

The trial attorney was in the court room and heard the
colloquy. The two defendants later asked him to represent
them. He said he could not go forward on such short notice.
Later he heard another attorney state to the court that he
had been asked to act as counsel and would need a postpone-
ment if he were to do so. He heard the court decline the
request. That attorney did not accept the case. In the
afternoon, at the trial attorney's office, the defendants again
asked him to act for them. He told them that in his view
it would be impossible to get a continuance but in the cir-
cumstances he would do the best he could, believing his as-
sistance would be better than none. On September 13 he
received the prior attorney's six pages of notes. He had
short talks with the defendants before trial. His motion for
specifications was answered orally on the morning of the trial.

## THE SCOPE OF THE WRIT OF ERROR.

The points now made could have been made at the trial
and raised on exceptions or appeal. The rule that a writ of
error is not available to review such issues is founded in the
high public interest in an end to litigation and the trial of

issues when and where they can be properly and fully tried. Bator, Finality in Criminal Law, 76 Harv. L. Rev. 441. For the rule, see *Guerin* v. *Commonwealth*, 337 Mass. 264, 268–269. The rule was applied as to illegally seized evidence in *Dirring, petitioner*, 344 Mass. 522 (a petition for a writ of habeas corpus).

The Supreme Court of the United States recognizes that rules such as ours give effect to a proper State interest. In *Henry* v. *Mississippi*, 379 U. S. 443, 448–453, the court said: "The Mississippi rule requiring contemporaneous objection to the introduction of illegal evidence clearly does serve a legitimate state interest. By immediately apprising the trial judge of the objection, counsel gives the court the opportunity to conduct the trial without using the tainted evidence. If the objection is well taken the fruits of the illegal search may be excluded from jury consideration, and a reversal and new trial avoided."

The policy of an end of litigation in due and usual course is stated and applied in some lower Federal courts in respect of review by habeas corpus of constitutional error in a trial in a Federal court. In *Thornton* v. *United States*, 368 F. 2d 822, 825–828 (Ct. App. D. C.), the court found no weakness in the judicial process (p. 829: no basis for claiming "ineffective assistance of counsel") and refused the writ even though the conviction was founded on illegal search and seizure. Accord, *Kuhl* v. *United States*, 370 F. 2d 20 (9th Cir.).

The petitioner, however, seeks to assimilate his case to those recent cases in which we have held that where there is a deprivation of the right to counsel and to prepare a defence, there is "error . . . in fact" (G. L. c. 250, § 9), which could not have been raised by appeal or exceptions and the writ will lie. *Allen* v. *Commonwealth*, 324 Mass. 558. *Lindsey* v. *Commonwealth*, 331 Mass. 1. *Drolet* v. *Commonwealth*, 335 Mass. 382. *Pugliese* v. *Commonwealth*, 335 Mass. 471. *Brown* v. *Commonwealth*, 335 Mass. 476. See *Sandrelli* v. *Commonwealth*, 342 Mass. 129, 141; *Shoppers' World, Inc.* v. *Assessors of Framingham*, 348 Mass. 366, 376, fn. 9.

RELIEF UNDER THE WRIT OF ERROR NOT TO BE
GRANTED IN THIS CASE.

A. *The judicial action shown was not the primary cause of the omission complained of nor does it otherwise require post-conviction relief.*

The single justice found that without investigation of the law the trial attorney was not prepared to present the defence under *Mapp* v. *Ohio*, 367 U. S. 643. He inferred that the constitutional defence ("the only strong defense") had not been prepared by the prior attorney and that, although immediate preparation had been impeded by the petitioner's nonavailability, the essential facts were known to the prior attorney from the lower court trial and preliminary talks with the petitioner.

Whether, with more time, the point would have been made is speculative. The trial attorney testified that he would have investigated the law and he "might have presented the defendant's case in a more favorable light." Without looking up the law, however, an exception could have been saved and the cases carefully checked before an appeal reached this court. We know the trial attorney to be an experienced practitioner for whom such procedure would be elementary. It seems likely that in the then state of our law, it understandably did not occur to either counsel that there was basis for objecting to the tools, or a basis for examining Federal decisions.

Suspicious nighttime conduct was, in 1962, a statutory basis for arrest. General Laws c. 41, § 98,[1] was not held unconstitutional until 1967 in *Alegata* v. *Commonwealth*, 353 Mass. 287, 289–293. *Commonwealth* v. *Lehan*, 347 Mass. 197, 202–205, indicating, in the light of developing law, that the use of the statute for more than threshold inquiry was

---

[1] "During the night time . . . [police officers] may examine all persons abroad whom they have reason to suspect of unlawful design, and may demand of them their business abroad and whither they are going . . . . Persons so suspected who do not give a satisfactory account of themselves . . . may be arrested by the police . . . and taken before a district court to be examined and prosecuted."

dubious, was decided March 6, 1964. *Preston* v. *United States*, 376 U. S. 364, indicating that a delayed search of the automobile without a warrant is invalid was decided March 23, 1964. *Beck* v. *Ohio*, 379 U. S. 89, holding inadmissible betting slips found on search after arrest on suspicion, was decided November 23, 1964.

There was ample opportunity for the prior attorney to prepare the case. *Commonwealth* v. *Brant*, 346 Mass. 202, 204. *Commonwealth* v. *Smith*, 353 Mass. 442, 445 – 446. It is not unreasonable to have a case prepared by one attorney and tried by another. Letting the case go to trial on September 13, after the trial attorney's appearance, without a request by him for more time, was not a denial by the court of time for preparation. Notwithstanding the court's firm action on September 12, the trial attorney having learned of the lack of any preparation of the law, should, on September 13, have asked for a reasonable continuance. *Commonwealth* v. *Binkiewicz*, 342 Mass. 740, 745–746. Only thus would he have discharged his obligation to inform the court that the case had not been adequately prepared by any attorney. Absence of a request for a continuance by counsel who had actually appeared could have been taken by the judge as indication that the attorney deemed himself ready and able properly to act.

It would have been appropriate and proper for the court to inquire of the trial attorney on September 13 if he was ready and reasonably prepared. Undoubtedly, as the single justice in effect found, the court's firm stand on September 12 contributed to the trial attorney's omission to tell the court that the case, as to the law, had not been prepared. In the circumstances, however, we think what the court did is inadequate ground for postconviction relief. The judge on September 12 was justified in bringing pressure for trial on a noncoöperating defendant. Notwithstanding what he said directly to others than the trial attorney on that day, we do not assume he would have let the defendant go to trial on September 13 without counsel. What he would have done in respect of a continuance on request of an attorney who

had actually entered an appearance cannot be concluded from what he said on September 12 before any attorney had appeared. Even if, in a search and seizure case (see subsection B below), there may be such weakness in the trial process chargeable to the court as to justify postconviction relief, this in our view, for reasons stated, is not such a case.

B. *The circumstances do not warrant relief under the writ in this search and seizure case.*

It is by no means clear that, had the admission of the tools in evidence been objected to and all rights of direct appeal or exceptions saved, the constitutional point would eventually have prevailed. It had two aspects. As to the first, although the *Henry* case, *supra* (361 U. S. 98), warranted the single justice's statement that there was strong basis for concluding lack of probable cause for the arrest, the defendants' conduct at the fur store suggests that probable cause might have been shown had the issue been properly raised and fully tried. See *Brinegar* v. *United States*, 338 U. S. 160. It is speculative whether diligent pursuit of the point that the search (within fifteen minutes of the arrest) was too late would have resulted in the application in the petitioner's favor, at the trial or on appeal or certiorari, of what is now the rule of the *Preston* case, *supra*. Assuming, without deciding, that the constitutional point would now be held valid (but see *Terry* v. *Ohio*,[2] 392 U. S. 1, 29–30, 33–34), we do not view what happened as the loss of such a fundamental constitutional right that, in the circumstances, postconviction relief should be granted.

We recognize that the scope of the writ of error is properly expanding to meet evolving constitutional principles. *Shoppers' World* case, 348 Mass. 366, at p. 376, fn. 9. We think, nevertheless, that it should not be used in this case to set aside a conviction for a substantive offence based on evi-

---

[2] On similar facts, the Supreme Court of the United States held that the officers were warranted in searching the defendants for weapons ("stop and frisk") and found unnecessary a ruling whether there was probable cause.

dence obtained by the police in procedures to which our then existing statutes gave support.

No patently unreasonable police conduct is shown. They had ground to suspect that they had interrupted a burglary. Detention for investigation under authorizing statutes was reasonable, as was searching the car. This is a case where diligent police work prevented a burglary and caught its planners.

Vindication of the right of citizens to be free of unreasonable search and seizure does not in our view require upsetting this judgment. This was not a conviction for being a suspicious person. Compare *Alegata* v. *Commonwealth*, 353 Mass. 287. There can be no suggestion that it is unconstitutional to impose punishment for the possession of burglarious tools with intent to use them. There is no question of the guilt of the petitioner. Words of the court in *Thornton's* case, 368 F. 2d 822, 827–828 (Ct. App. D. C.), are apt. "[Reluctance] to let general considerations of administration require injustice in the particular case . . . is overcome by the weighty consideration . . . that the claim of unreasonable search and seizure does not weaken the probative value of the evidence against the accused. It is partly because the rule of exclusion is not a truth-protecting device that the Supreme Court decreed last year that *Mapp* v. *Ohio*, 367 U. S. 643, . . . would be given only prospective effect in State convictions. . . . Collateral attack . . . would be of little if any weight in achieving the pattern of lawful conduct by enforcement officials which is the objective of the exclusionary rule. . . . [T]he rule [is relevant] that prohibits an accused from objecting to evidence obtained by the unreasonable search of another . . .." For an application of this rule see *Commonwealth* v. *Dirring, post*, 523. See (other postconviction cases) *In re Sterling*, 63 Cal. 2d 486; *People ex rel Balbot* v. *Denno*, 28 App. Div. 2d (N. Y.) 919 (illegal search and seizure). Compare *People* v. *McMann, Warden of Clinton Prison*, 18 N. Y. 2d 257 (prior conviction wrongly admitted). See also the dissent of Mr. Justice Black in *Bumper* v. *North Carolina*, 391 U. S. 543, 560–561.

We do not overlook the holdings of the Supreme Court of the United States in *Fay, Warden,* v. *Noia,* 372 U. S. 391, and *Henry* v. *Mississippi,* 379 U. S. 443. We have in mind the importance of disposing of Federal constitutional points in the State courts and providing adequate remedies to do so. See the *Henry* case (379 U. S. at 455) and the concurring opinions of Mr. Justice Clark and Mr. Justice Brennan in *Case* v. *Nebraska,* 381 U. S. 336, 340, 344–345. We believe that the petitioner has been given adequate opportunity to raise the issues[3] and that the findings adequately set out the relevant facts (*Townsend* v. *Sain,* 372 U. S. 293). Our conclusion is that the State policy, above discussed, is applicable and determinative. If this is a case in which Federal rules require that the petitioner be released it is appropriate that such be determined in a Federal tribunal.

*Judgment affirmed.*

---

[3] The petitioner also refers to the judge's charge. Nothing therein warrants postconviction relief.