COMMONWEALTH *vs.* THOMAS KIRKER.

Bristol.  May 2, 1972. — June 23, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Evidence,* Of identification, On redirect examination, Cumulative evidence.  *Practice, Criminal,* Comment or question by judge.

There was no error at a criminal trial in admission of testimony by a witness for the Commonwealth on redirect examination that he had identified the defendant while the defendant was in a police station cell without counsel shortly after the alleged crime where defence counsel in cross-examination had elicited from the witness that he had seen the defendant in other courts and the testimony on redirect examination was merely cumulative. [203–205]

The judge at a criminal trial did not exceed his privilege of controlling the conduct of the trial by certain questions and comments he addressed to three defence witnesses. [205]

INDICTMENT found and returned in the Superior Court on November 6, 1969.

The case was tried before *Smith,* J.

*Reuben Goodman* for the defendant.

*Richard C. Paull,* First Assistant District Attorney, for the Commonwealth.

HENNESSEY, J.  The defendant was found guilty by a jury of assault and battery with a dangerous weapon. He appeals under G. L. c. 278, §§ 33A–33G.

We summarize the evidence.  The defendant, together with his brothers Robert Kirker and Joseph Kirker, Bruce Kelly and a fifth man, entered an establishment called the Strand Cafe in Fall River on the evening of August 5, 1969.  Present in the place were George Pacheco, the bartender, and six customers, including Lionel St. Pierre, Richard Souza, Norbert Perreira and Seraphim Bento.  After some commotion, St. Pierre was hit on the right side of his face and knocked out.  Souza was punched by Joseph Kirker, and was kicked on the head by Kelly and the defendant.  A cut on Souza's chin

required four stitches. The defendant struck Perreira, knocking out one of Perreira's front teeth. Perreira was also hit by chairs, a cue stick, and a bar stool, and from these attacks suffered a broken nose, ripped lips and chest injuries. The defendant attacked Perreira with the bar stool and Robert Kirker struck Perreira with the billiard cue. Pacheco was knocked down and received two black eyes and two cuts under the eyes.

During the trial, Pacheco and other witnesses identified the defendant as one of the assailants. Pacheco testified that the incident took, at most, ten minutes, and also stated that it "could be five or six, or eight to nine. It went very fast." He further testified that, "They come in inside the door — bang, bang — they knocked me over here." None of the witnesses who were assaulted had ever seen the defendant or his companions before that evening. Robert Kirker, Joseph Kirker and Bruce Kelly had been convicted at a previous trial, but the defendant was missing and in default at the time of that trial. Robert Kirker, Joseph Kirker and Bruce Kelly, at the trial of the instant case, testified that the defendant was not present when the incident occurred.

No motion to suppress the in-court identification testimony by Pacheco or other witnesses was filed, and defence counsel made no objection to the identification testimony. The defendant now alleges error in the admission of testimony by Pacheco that he identified the defendant and two of the other assailants while they were confined in a cell at a police station, about one week after the incident occurred at the Strand Cafe. The defendant also alleges error in certain comments, made by the judge in the hearing of the jury, which the defendant says reflected upon the credibility of certain witnesses introduced by the defence. Other exceptions of the defendant have not been argued, and are treated as waived.

1. There was no error in the admission of testimony by Pacheco that he had identified the defendant while the defendant was in a police station cell without counsel.

The defendant argues that this evidence, which was admitted over the objection and exception of the defendant, violated the Fourteenth Amendment to the Constitution of the United States, as it applies the Sixth Amendment to the States. He contends that the testimony "is the direct result of the illegal lineup 'come at by exploitation of [the primary] illegality' . . . [and that] [t]he State is therefore not entitled to an opportunity to show that that testimony had an independent source." *Gilbert* v. *California*, 388 U. S. 263, 272–273. See *Commonwealth* v. *Mendes*, 361 Mass. 507, 510–512. But see *Kirby* v. *Illinois*, 406 U. S. 682, which was decided after the instant case was argued before this court. The defendant also asserts that the failure to file a motion to suppress the evidence does not constitute a waiver of the constitutional issue.

We do not reach consideration of the constitutional issue. The evidence of the identification at the jail was clearly rendered admissible by the questions addressed to Pacheco by defence counsel in cross-examination.

Pacheco was introduced by the Commonwealth as a witness, and on direct examination before the jury made an identification of the defendant as one of the assailants. The prosecutor, during direct examination of Pacheco, made no reference to any pre-trial identification of the defendant. Thereafter, defence counsel cross-examined the witness at length, with emphasis upon the limited time available for the witness to observe his attackers, and the difficult conditions under which he made his observations. Defence counsel then directed a series of leading questions which sought to establish that the occasions upon which the witness had seen the defendant since the night of the attack had occured in District and Superior Courts.

Eventually, the witness answered affirmatively to a question by defence counsel which asked, "When you are pointing them out, you are pointing out the same fellows here today you saw in other courts charged with this same crime; is that right?" The prosecutor, thereafter,

on re-direct examination of the witness, over the objection and exception of the defence, elicited that the witness had identified the defendant at the police station one week after the crime. In the face of the implication of suggestibility of the witness in this line of questions on cross-examination, it was permissible to allow the prosecutor to inquire as to the identification of the defendant by Pacheco which had occurred before the defendant had been charged with the crime or had appeared in court. See *Commonwealth* v. *Binkiewicz,* 342 Mass. 740, 758. Cf. *Whipple* v. *Rich,* 180 Mass. 477, 479.

We observe also that Pacheco's viewing of the defendant at the jail was mentioned by Pacheco, without objection or motion to strike, in the course of cross-examination. Subsequently, defence counsel made reference to the same identification at the jail, in his direct examination of two defence witnesses. The effect of the testimony of Pacheco on redirect examination was at most cumulative.

2. The defendant also argues that the judge, by certain questions and comments he addressed to three witnesses introduced by the defence, impugned the credibility of the witnesses and commented on the evidence contrary to G. L. c. 231, § 81. The fact that no objections or exceptions were offered at any time as to these matters is dispositive of the present contentions. Nevertheless, our examination of the entire record reveals that the judge did not exceed his privilege of controlling the conduct of the trial, either as to the number of times in which he intervened, or in the nature and content of his questions and comments. The intervention of the judge was relatively slight in the context of lengthy interrogation of the three witnesses by counsel. The intervention here was not fairly comparable to cases argued as controlling by the defendant, namely, *Commonwealth* v. *Barry,* 9 Allen 276; *Commonwealth* v. *Foran,* 110 Mass. 179; *Cahalane* v. *Poust,* 333 Mass. 689; *Brown* v. *Commonwealth,* 335 Mass. 476.

*Judgment affirmed.*