RUSSELL THIBODEAU *vs.* COMMONWEALTH.

Suffolk.     September 17, 1974. — December 4, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, & WILKINS, JJ. ·

*Sex Offender. Practice, Criminal,* Sentence, Judicial discretion. *Constitutional Law,* Due process of law. *Error, Writ of.*

Where, after a verdict of guilty of assault with intent to rape, the judge, although concurring in the opinion of others that the defendant should be "seriously considered" for proceedings under G. L. c. 123A relating to sexually dangerous persons, nevertheless sentenced him to a long term of imprisonment and also stated that he, the judge, hoped that the "incarcerating authorities" would transfer the defendant to a treatment center, it could not be said either that the judge acted on the basis that he had no discretion in the matter or that, realizing that he did have discretion, he abused it. [455-456]

A defendant convicted of assault with intent to rape was not deprived of due process of law where the judge, in sentencing him to a long term of imprisonment, stated that he relied in part on a report of a psychiatrist which contained statements that the defendant was sexually "highly dangerous" and should be "institutionalized for a long period of time" but, read as a whole, did not constitute a recommendation for imposition of a long term of imprisonment, as contended by the defendant, and left it to the judge to decide whether the institutionalization should initially be by a criminal sentence or by commitment to a treatment center for sexually dangerous persons. [456-458]

Where all errors alleged by the defendant in a criminal case with respect to his sentencing were based on events and rulings which occurred in open court, in his presence and in the presence of his counsel, when he had an opportunity to save exceptions and to obtain appellate review but failed to do so, issuance of a writ of error sought by him on the basis of such errors was properly denied. [458-459]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on October 1, 1973.

The case was heard by *Braucher, J.*

*John F. Palmer,* for the petitioner.

*Andrew A. Athy,* Deputy Assistant Attorney General (*Wade M. Welch,* Assistant Attorney General, with him) for the Commonwealth.

QUIRICO J.    This is a petition for a writ of error seeking review of sentences imposed on the petitioner in two criminal cases. The case is here on the petitioner's exception to an order of a single justice of this court that the issuance of a writ be denied. There was no error.

We summarize the facts alleged in the petition. On January 31, 1968, the petitioner, having been found guilty by a jury of the crimes of assault and battery by means of a dangerous weapon and assault with intent to rape, was sentenced to a term of six to ten years on the first offense and one of eighteen to twenty-five years on the second offense, the sentences to be served concurrently at the Massachusetts Correctional Institution at Walpole. At the time he imposed sentence the trial judge filed a document entitled "Findings of Court Re: Sentencing." The findings describe the defendant's attack upon, and attempt to rape, a sixteen year old girl on a public street. They also describe the force and violence which the defendant used, tearing off the victim's clothes from her waist down, and inflicting three knife wounds on her neck and back.

The judge found further that the district attorney, defense counsel and the probation officer "concurred in the recommendation that the defendant should be seriously considered for examination, diagnosis, and possible confinement and treatment under the provisions of . . . [G. L. c. 123A, §§ 4 and 5]." Thereafter, instead of initiating

proceedings under c. 123A to determine whether the petitioner was a "sexually dangerous person" as defined in § 1 thereof, the judge sentenced the defendant to the two terms described above. As a part of his document containing his findings he said further: "The Court has taken steps to have the incarcerating authorities informed that the Court makes the recommendation and agrees with the recommendation of all others concerned in the case. . . . I concur in the recommendation that this man should be diagnosed, and if found appropriate, should be confined to the treatment center under Chapter 123A. However, in this case, I regard as my primary duty in the light of the case that I heard to make sure that the defendant is removed from circulation for a substantial period of years. I hope that the incarcerating authorities will in conjunction and in conformity to my recommendation transfer the defendant to the treatment center promptly after he begins to serve his sentences."

The petitioner contends that it was error for the judge to sentence him to the Massachusetts Correctional Institution at Walpole instead of proceeding against him under G. L. c. 123A relating to sexually dangerous persons. He argues in his brief that "[b]y concluding that the petitioner herein was an appropriate subject for diagnosis at the Treatment Center, but nevertheless sentencing him to Walpole, the Court has improperly circumvented the statutory procedures enacted by the legislature for such appropriate cases." We do not agree.

General Laws c. 123A, § 4, as appearing in St. 1958, c. 646, § 1, provides in part that when a defendant is found guilty in the Superior Court of any one of certain specified crimes, including an attempt to commit rape, "the court, may, upon its own motion or upon motion of the district attorney, prior to imposing sentence, commit him to the [treatment] center . . . for the purpose of examination and diagnosis under the supervision of . . . psychiatrists." If the judge exercises his discretion under § 4 to commit the defendant to the treatment center before sentencing him,

the examining psychiatrists in due course file a report of their examination and diagnosis with recommendations for the disposition of the defendant. Section 5 of the same statute provides that if the report "clearly indicates that such person is a sexually dangerous person," the court shall hold a hearing to determine whether the person is a sexually dangerous person, and that "[i]f the court finds that the person is a sexually dangerous person, it may, in lieu of the sentence required by law for the original offence, commit such person to the [treatment] center . . . for an indeterminate period of a minimum of one day and a maximum of such person's natural life."

It is clear, both on the basis of the language of the statutes and our decisions thereunder, (a) that when the petitioner was found guilty the judge had discretion under § 4 either to sentence him or to start proceedings to determine whether he was a sexually dangerous person, and (b) that even if the judge had started such proceedings and found that the petitioner was a sexually dangerous person, he still would have had discretion under § 5 either to sentence him for his crimes or to commit him to the treatment center. *Commonwealth* v. *Gomes,* 355 Mass. 479, 485-486 (1969). *Gomes* v. *Gaughan,* 471 F. 2d 794, 798 (1st Cir. 1973). The petitioner does not argue to the contrary. Instead, recognizing, as he must, the rules stated above, he argues in the alternative that the judge, in sentencing the petitioner rather than committing him to the treatment center, either failed to exercise his discretion on the mistaken assumption that he had none, or he abused his discretion. This argument is without merit.

No fair and reasonable reading of the precise and careful statement of findings and other considerations which the judge placed on file before sentencing the petitioner can permit a conclusion that he was not aware that he could, at his discretion, either sentence the petitioner for his crimes or start proceedings to determine whether he was a sexually dangerous person. On the contrary, the judge's language compels a conclusion that he was fully aware of the two

options open to him, and that in the exercise of his discretion he elected to sentence the petitioner for his crimes.

There is nothing whatever in the record to support the petitioner's claim that the judge abused his discretion. Here, the judge having a choice of two methods of disposing of the cases chose one method and the petitioner would have preferred the other. Under the statutes the choice of disposition rested with the judge and not with the petitioner. Resort to this court for appellate review must rest on a foundation of alleged legal error, and not merely on a difference of opinion on a matter initially committed to the discretion of the trial judge. This appeal is nothing more than a request that this court substitute its judgment for that of the judge. This we will not do.

We take notice of the fact that the date on which the petitioner will become eligible for parole consideration under his sentences (G. L. c. 127, § 133, as amended by St. 1971, c. 464) may be much later than it would be if he had initially been committed to the treatment center in lieu of the sentences (G. L. c. 123A, § 9, as amended through St. 1966, c. 608), but that fact affords him no basis for relief.

The petitioner makes the further contention that he was denied his rights under the due process clause of the Fourteenth Amendment to the United States Constitution because the judge, in sentencing him, stated that he relied in part on the recommendation of a psychiatrist "that in the event of verdicts of guilty . . . [the petitioner] should be, 'Institutionalized for a long period of time.' " The quoted language is based on the following paragraph of the psychiatric report in question: "This young man [the present petitioner] should be considered highly dangerous and if found guilty by the court should be institutionalized for a long period of time. Because of his dangerousness in the sexual area, if he is found guilty, he should be evaluated as to whether he fits the definition of a Sexually Dangerous Person." The psychiatric examination of the petitioner appears to have been made pursuant to G. L. c. 123, § 100,

as it appeared prior to November 1, 1971,[1] when it was superseded by G. L. c. 123, § 15. (See St. 1970, c. 888, § 4; St. 1971, c. 470; and St. 1971, c. 760, § 12.)

The petitioner would have us read the language quoted above from the psychiatric report as a recommendation for the imposition of a long term of imprisonment. That is not a fair reading of that language or of the report as a whole. The quoted language follows the psychiatrist's statement that the petitioner was a youth "[w]ithout psychosis . . . who exhibits remarkably fragile controls over both his sexual as well as hostile impulses. He is clearly competent to stand trial. . . . Further pre-trial psychiatric study is not indicated." Read in its entirety, the psychiatric report stated the results of the examination, with emphasis on the petitioner's "remarkably fragile controls over both his sexual as well as hostile impulses," recommended consideration of a long period of institutionalization in the event of conviction, but clearly left it up to the judge to decide whether the institutionalization should be initially by way of a criminal sentence or by commitment to the treatment center.

The petitioner argues that the judge, in effect, imposed on him a lengthy sentence as a punishment for being sick, thus violating his rights under the Fourteenth Amendment. This argument totally ignores the clear statement by the judge that he elected to sentence the petitioner for his serious crimes, while at the same time stating his hope "that the incarcerating authorities will in conjunction and in conformity to my recommendation transfer the defend-

---

[1] The pertinent language of the statute at that time was: "If a person under complaint or indictment for any crime . . . is at the time appointed for trial, hearing or sentence, or at any time prior thereto found by the court to be mentally ill or in such mental condition that his commitment to a state hospital is necessary for his proper care or observation pending a determination as to any mental illness, the court may commit him to a state hospital . . . [for examination and report on his mental condition]. The court may in its discretion employ one or more experts in mental illness . . . to examine the person." In this case the examination of the petitioner and the report of the examination were made by Dr. Eugene J. Balcanoff, a court clinic psychiatrist, at the request of a judge of the Superior Court.

ant to the treatment center promptly after he begins to serve his sentences." This argument by the petitioner assumes a fact without any foundation in the record, and it is otherwise utterly without merit.

Despite the fact that we have elected to discuss the petitioner's exceptions as though properly before us, we do not believe that this is a proper case for a writ of error. All of the errors now alleged by the petitioner are based on events and rulings which occurred in open court, in his presence and in the presence of his counsel. He had an opportunity then to save exceptions to any action or ruling which he thought erroneous, and to obtain appellate review thereon by appropriate procedures available to him. He neither excepted nor sought appellate review. In *Cortellesso* v. *Commonwealth*, 354 Mass. 514 (1968), we said at pp. 517-518: "The points now made could have been made at the trial and raised on exceptions or appeal. The rule that a writ of error is not available to review such issues is founded in the high public interest in an end to litigation and the trial of issues when and where they can be properly and fully tried." For substantially the same or similar language, see *Richardson* v. *Commonwealth,* 355 Mass. 112, 114-115 (1969), and *Lewis* v. *Commonwealth,* 1 Mass. App. Ct. 812 (1973). We believe that the present case is controlled by the language quoted above from the *Cortellesso* case.

The petitioner does not allege any of the several generally recognized grounds on which writs of error can be granted following convictions for crimes: (a) the alleged denial of counsel or of the effective assistance of counsel (*Allen* v: *Commonwealth,* 324 Mass. 558 [1949]; *Commonwealth* v. *Blondin,* 324 Mass. 564 [1949]; *Lindsey* v. *Commonwealth,* 331 Mass. 1, 5 [1954]; *Jones* v. *Commonwealth,* 331 Mass. 169, 171 [1954]; *Drolet* v. *Commonwealth,* 335 Mass. 382 [1957]; *Pugliese* v. *Commonwealth,* 335 Mass. 471 [1957]; *Brown* v. *Commonwealth,* 335 Mass. 476 [1957]; *Lamoureux* v. *Commonwealth,* 353 Mass. 556 [1968]; see *Sandrelli* v. *Commonwealth,* 342 Mass. 129, 141 [1961]); (b) the

366 Mass. 459                                        459

Douglas *v.* Woods Hole, Martha's Vineyard & Nantucket Steamship Authy.

alleged invalidity of the sentence imposed by the court (*Lewis* v. *Commonwealth,* 329 Mass. 445 [1952]; *Kuklis* v. *Commonwealth,* 361 Mass. 302 [1972]; *Gallinaro* v. *Commonwealth,* 362 Mass. 728 [1973]); or (c) an alleged ground "whose constitutional significance was not established until after the petitioner's trial and appeal to this court" (*LeBlanc* v. *Commonwealth,* 363 Mass. 171 [1973]).[2]

On the facts alleged by the petitioner, he appears to be attempting to obtain a writ of error as a belated substitute for the right of appellate review which was available to him when he was convicted and sentenced in 1968, but which he did not then exercise. The single justice properly denied the issuance of the writ.

*Exceptions overruled.*

---

[2] The court notes that although formerly post-conviction relief was commonly sought in the first instance by a petition for a writ of error based on some of the grounds stated above, it is now initially sought in most cases by a motion for a new trial. This change is the result of two developments. The first was the amendment of G. L. c. 278, § 29, by St. 1966, § 301, permitting a motion for a new trial to be filed and allowed "at any time" instead of within one year as previously limited. The second was our decision in *Earl* v. *Commonwealth,* 356 Mass. 181, 183 (1969), holding that as to questions which can be raised by a motion for a new trial "it is preferable that those questions be resolved in the first instance by the trial judge upon a motion for new trial."