George R. HEBERT, Plaintiff,
Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 84–1145.

United States Court of Appeals,
First Circuit.

Submitted Jan. 10, 1985.

Decided April 5, 1985.

David R. Patterson, Worcester, Mass., on brief, for plaintiff, appellant.

William F. Weld, U.S. Atty., Ralph A. Child, Asst. U.S. Atty., and Donna C. McCarthy, Asst. Regional Atty., Dept. of Health and Human Services, Boston, Mass., on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, COF-FIN and BOWNES, Circuit Judges.

PER CURIAM.

The plaintiff appeals from the denial of Social Security disability benefits.

After being convicted of criminal offenses, plaintiff was found to be a sexually dangerous person under Mass.G.L. c. 123A, and he was committed to a treatment facility in 1968. He was paroled into the community in 1974. He worked for awhile, but then committed another offense in August 1976 and was returned to a treatment facility. Plaintiff claims disability since 1968 due to a personality disorder or sociopathic personality.

The medical evidence indicates that claimant is oriented, of average or slightly below average intelligence, and able to converse pleasantly and function adequately in his custodial setting. Nevertheless, he remains sexually dangerous and doctors recommend against his release.

Claimant asserts he has been removed from society for the treatment of mental illness and consequently is unable to engage in substantial gainful employ-

ment. Pointing to the opinions of various doctors who said claimant was still in need of "inpatient" services and unable to tolerate the stresses of the outside world, claimant apparently would equate his position to that of a person who, hospitalized for the treatment of an organic disorder, could not be expected to perform substantial gainful activity. The two situations are not the same. To begin with, claimant was removed from society not because of mental illness but because he committed several crimes. The Massachusetts statute does not require that sexually dangerous persons receive treatment, but rather, under Mass.G.L. c. 123A, § 5, it is entirely discretionary with the sentencing court whether to sentence a sexually dangerous defendant or to commit him to a treatment center. The court may imprison the defendant and refuse to place him in a treatment center even if it feels the defendant would be a good candidate for treatment. *Thibodeau v. Commonwealth,* 366 Mass. 452, 319 N.E.2d 712 (1974). As for the doctors' statements, they were made in the context of determining whether claimant's release would pose a danger to society and were not addressed to the much narrower question of whether claimant could handle regular employment.

Claimant argues further that the fact that he poses a danger to society if released is additional evidence of his inability to perform "basic work activities" and hence of disability. Among the examples of basic work activities the Secretary's regulations list is "[r]esponding appropriately to ... co-workers and usual work situations." 20 C.F.R. § 404.1521. Pointing to an incident where he assaulted a female at work, claimant contends his sociopathic personality renders him unable to conform to social norms thereby severely impairing his ability to relate to co-workers or clients. The Secretary was not required to so find. The work incident referred to occurred in 1967. After that, during the time claimant was on parole, claimant held a number of jobs and received decent reports from some, though albeit not all, of his employers. He apparently functions adequately

within his custodial setting, cutting hair several hours a day, without, so far as appears, untoward incident. The evidence therefore does not compel a finding that claimant would be unable to function appropriately in a work setting. Undoubtedly, the anti-social tendencies of many inmates of correctional facilities would render them potential dangers to society if released, but that does not entitle them to disability benefits.

Claimant points out that in the year and a half he was paroled he went through twelve or so jobs, holding some for less than a month, and argues this unsuccessful work history is proof of his inability because of mental disability to perform substantial gainful employment.

With respect to some of the jobs, claimant simply lacked the technical skills for the work. That claimant could not do certain jobs does not indicate an inability to perform any substantial gainful employment. With respect to other jobs, claimant was more successful. He held one job for ten months before leaving so as to find work closer to his former wife and children, and the employer indicated that prior to claimant's reinvolvement with the former wife, claimant had been a good worker. Claimant held another job, a shipper position, successfully for the four months preceding his 1976 arrest, and the employer reported claimant had been dependable, honest, intelligent, hardworking, and stated "[h]e appeared to be able to handle the position for which he was hired." Given this evidence, the Secretary was not required to find that claimant's personality disorder rendered claimant mentally unable to handle substantial gainful employment.

Nor do we find *Marion v. Gardner,* 359 F.2d 175 (1966), *Doe v. Harris,* 495 F.Supp. 1161 (S.D.N.Y.1980), or the other cases on which claimant relies controlling. In awarding benefits in *Marion v. Gardner* to a homosexual with deviant tendencies toward young boys, the court relied in part on the unlikelihood that any reputable employer knowing claimant's background would hire claimant. Federal law has

changed since the date of the *Marion* decision, and inability to be hired is no longer a relevant consideration. 42 U.S.C. § 423(d)(2)(A). Nor are the state statutes involved identical. In *Doe* the claimant had been *acquitted* of murder by reason of mental disease or defect and committed to psychiatric treatment centers. The present claimant, convicted of criminal offenses, stands in a different position and we need not decide whether we agree with *Doe*.

■ Claimant contends he did not receive a fair hearing because the ALJ was biased against him. As evidence of bias, he points to a passage where, he says, the ALJ misstated the law. We need not decide whether the statement was correct for the making of an error of law does not constitute bias. *United States v. Parrilla Bonilla,* 626 F.2d 177, 180 (1st Cir.1980). The error, if any, does not infect the finding that any mental impairment claimant suffered was not of sufficient severity to prevent performance of substantial gainful activity.

*Affirmed.*