SCOTT SWAIN *vs.* SUPERINTENDENT, OLD COLONY CORRECTIONAL CENTER. NO. 89-P-16. JULY 26, 1990. *Habeas Corpus. Sex Offender. Practice, Civil*, Sex offender. *Practice, Criminal*, Sentence.

Swain, a State prisoner, appeals from an order of the Superior Court dismissing his petition for a writ of habeas corpus.[1] Swain contended that he should be released from custody because his 1986 commitment to the treatment center at M.C.I., Bridgewater (treatment center), for being a Sexually Dangerous Person (SDP) pursuant to G. L. c. 123A, § 5, and his return to prison in 1988 were improper, illegal and unconstitutional.

On September 17, 1984, a jury found Swain guilty of aggravated rape and assault and battery by means of a dangerous weapon (cigarette lighter). On October 15, 1984, the trial judge ordered Swain committed to the treatment center for evaluation in accordance with G. L. c. 123A, § 4. Following that evaluation the judge, after hearing on March 14 and 15,

---

[1]Swain, in addition, sought alternative relief in the form of a declaratory judgment pursuant to G. L. c. 231A.

1985, determined, pursuant to G. L. c. 123A, § 5, that Swain was an SDP. However, at that time the judge announced his intention to exercise the discretion accorded him by the statute to sentence rather than to commit Swain. On May 10, 1985, the judge sentenced Swain to serve a seven and one-half to ten year prison sentence at M.C.I., Cedar Junction, for aggravated rape.[2]

Swain subsequently was transferred to the North Central Correctional Center at Gardner. On October 7, 1986, the superintendent of that institution filed a motion to commit Swain to the treatment center for a sixty-day diagnostic period pursuant to G. L. c. 123A, § 6. On November 25, 1986, the same Superior Court judge, without a hearing, ordered Swain committed for an indeterminate term to the treatment center. The order, however, was entered, pursuant to G. L. c. 123A, § 5, as of the date of the earlier (March 14, 1985) determination of his status as an SDP.

On October 16, 1987, Swain filed a complaint which sought, among other things, (1) a declaration that the 1986 commitment to the treatment center was invalid, (2) his immediate release from the treatment center, and (3) credit against his criminal sentence for the time he spent there. At a December 2, 1987, hearing scheduled to address those claims[3] the judge acknowledged that he had improperly committed Swain to the treatment center in 1986. In an effort to rectify the situation, on January 4, 1988, the judge entered the following order:

> "Pursuant to M.G.L. c. 231, § 96 and Mass.R.Civ.P. 81(e), after a hearing and upon agreement of the parties, this Court hereby orders that defendant, Scott Swain, is relieved from the order of commitment to the Treatment Center issued on November 25, 1986.
> The Court further orders that the defendant be returned to the custody of the Department of Correction[] to serve the balance of his sentence and that the period at the Treatment Center be counted against the sentence on the underlying offense."

On June 10, 1988, Swain, then held at the Old Colony Correctional Center, Bridgewater, brought the present petition for a writ of habeas corpus, which was dismissed on September 21, 1988.

Swain argues on appeal that the first paragraph quoted above requires his release from all custody because: (1) the November 25, 1986, commitment to the treatment center replaced Swain's prison sentence, and (2)

---

[2]Swain also was sentenced to serve a concurrent three to five year term on his conviction for the assault and battery by means of a dangerous weapon.

[3]Swain was not present at this hearing, but was represented by counsel. An assistant district attorney explained Swain's absence: "Apparently the habe went to one part of Bridgewater, and they chose, or they did not send it to the appropriate part of Bridgewater, as a result of which he is not present."

relief from the commitment order was, in effect, a decision that he was no longer a sexually dangerous person. These arguments are without merit.[4]

Swain's claims of error are premised upon the language of G. L. c. 123A, § 5, as in effect in 1985. The provision then read in pertinent part: "If the court finds that the person is a sexually dangerous person, it may, *in lieu of* the sentence required by law for the original offence, commit such person . . . [emphasis supplied]." G. L. c. 123A, § 5, as appearing in St. 1958, c. 646, § 1.[5] Swain correctly points out that this language gave the judge discretion either to sentence or to commit to the treatment center a convicted defendant found to be an SDP. *Thibodeau* v. *Commonwealth*, 366 Mass. 452, 454-455 (1974).

Swain first argues that because the judge could not both sentence and commit him, "[i]t is axiomatic" that the commitment which was backdated to the date of the initial sentence must have eradicated that sentence. Swain does not dispute, however, that the judge acted properly in sentencing rather than committing him on May 10, 1985, even though the judge had previously determined that Swain was an SDP. Nor is it disputed that Swain was illegally committed on November 25, 1986. See generally *Commonwealth* v. *Desroches*, 27 Mass. App. Ct. 866, 871 (1989)(possibility of future indeterminate commitment after sentencing

---

[4]Swain's counsel argued below in the present action that Swain's constitutional rights were violated at the December 2, 1987, hearing on his complaint that he was illegally committed because he was not present at that hearing. At the August 31, 1988, hearing before another Superior Court judge in the present action, Swain's counsel acknowledged that Swain was represented by other counsel at the December 2, 1987, hearing, and that his attorney agreed to the order, filed on January 4, 1988, that returned Swain to the custody of the correctional authorities. Counsel argued at the August 31, 1988, hearing that had Swain been present he would have asked that he be released from all custody. On appeal Swain eschews that claim in favor of the above-recited statutory claims. We note, however, that his complaint in the 1987 action sought that he be released from the treatment center and that the time he spent there be credited against his prison sentence, but did not request that he be released from all custody.

Swain also does not pursue here his earlier claims that the trial judge's January 4, 1988, order erroneously applied civil rules (G. L. c. 231 § 96 [relief from judgment]) to a criminal proceeding. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). We briefly note that although a c. 123A commitment proceeding employs the stringent standard of proof required in criminal cases, it remains a civil proceeding. *Commonwealth* v. *Barboza*, 387 Mass. 105, 109 (1982). See *Commonwealth* v. *Ackers*, 343 Mass. 63, 68 (1961). But see Mass.R.Civ.P. 81(a)(8), 365 Mass. 841 (1974).

[5]Section 5 was subsequently amended by St. 1985, c. 752, § 1, to provide, in the third paragraph, that upon a determination "that the person is a sexually dangerous person, [the court] shall sentence such person as provided by law for the original offense *and* may also commit such person to the [treatment] center . . . for an indeterminate period of a minimum of one day and a maximum of such person's natural life" (emphasis supplied). By St. 1985, c. 752, § 4, the third paragraph of § 5 applies "only to persons sentenced for offenses committed on or after the effective date of this act." St. 1985, c. 752, was approved on January 6, 1986.

without new misconduct potentially unfair). We do not think that it logi-cally follows that the subsequent *illegal* commitment supplanted the prior *legal* sentence. It is much more sensible for the prior legal action to re-main in force and the subsequent illegal one to be rendered a nullity. See *Commonwealth* v. *Ackers*, 343 Mass. 63, 67 (1961). The judge's January 4, 1988, order, which returned Swain to the custody of the correctional authorities to serve the remainder of his outstanding sentence and gave him credit for the time he spent at the treatment center, achieved that result.

Swain's second argument, that the January 4, 1988, order was in effect a declaration that he was not an SDP, seeks to elevate form over sub-stance. He correctly observes that an individual committed pursuant to § 5 of G. L. c. 123A, as appearing in St. 1958, c. 646, § 1, "shall be held until released under the provisions of section nine [of c. 123A]," and § 9 pro-vides in pertinent part that "[u]nless the court finds that such person re-mains a sexually dangerous person, it shall order such person to be dis-charged from the treatment center." G. L. c. 123A, § 9, as appearing in St. 1985, c. 752, § 1. From this Swain concludes that since he was no longer committed and § 9 provides the only avenue for such relief, the terms of § 9 must have been applied in this case. This argument also is wide of the mark. Section 9 presupposes a prior valid commitment under either § 5 or § 6. The court below never ruled that Swain was no longer an SDP.

Finally, in an effort to avoid what seems to be controlling law, Swain claims that *Commonwealth* v. *Ackers*, 343 Mass. at 63, is not applicable to this case because *Ackers* concerned a commitment under G. L. c. 123A, § 6, not § 5. Our reading of the *Ackers* decision does not indicate that its holding is confined to § 6 of G. L. c. 123A. See *id.* at 67.

> *Order dismissing petition*
> *for issuance of writ*
> *of habeas corpus affirmed.*

*Gary E. Lambert* for the plaintiff.

*Richard C. McFarland*, Special Assistant Attorney General, for the defendant.